UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IBF COLLATERALIZED FINANCE
CORPORATION, as successor in interest to
IBF SPECIAL PURPOSE CORPORATION III,

     Plaintiff,

  -against-

1970 ASSET MANAGEMENT CORP., EDWARD
T. STEIN and LAWRENCE PASSARETTI,

     Defendants.
-------------------------------------------------------------x

Docket No. CV 02 5694 GERSHON, J. GO, M.J.

COMPLAINT

  Plaintiff, by its attorneys Kurzman Eisenberg Corbin Lever & Goodman LLP, complains of the Defendants and alleges:

## JURISDICTION

1. Subject matter jurisdiction of this Court over this action is predicated on diversity of citizenship, pursuant to 28 U.S.C. §1332(a), as between citizens of different states.

2. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## PARTIES

3. At all relevant times, Plaintiff was, and is, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the District of Columbia, presently operating as a Debtor In Possession under the United States Bankrutpcy Code, and is the successor in interest by merger to IBF Special Purpose Corporation III ("IBF").

4. At all relevant times, IBF was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the District of Columbia, engaged

in the business of extending financing to commercial borrowers for the purpose of acquiring or carrying on business or investment activity.

5. Upon information and belief, at all times hereinafter mentioned, Defendant 1970 Asset Management Corp. ("1970") was, and is, a corporation organized and existing under the laws of the State of New York, with its principal place of business in the County of Suffolk, State and Eastern District of New York, engaged in the investment business.

6. Upon information and belief, at all times hereinafter mentioned, Defendant Edward T. Stein ("Stein") was, and is, a resident of the State and Eastern District of New York, and was, and is, the principal shareholder, officer and director of 1970.

7. Upon information and belief, at all times hereinafter mentioned, Defendant Lawrence Passaretti ("Passaretti") was, and is, a resident or maintains a principal place of business in, the State of New York, and was, and is, engaged in business as a stock broker and financial advisor.

## INTRODUCTION

8. This is an action to collect on an unsatisfied Promissory Note, dated September 21, 1998 (the "Note") due in satisfaction of a loan from Plaintiff to 1970, personally guaranteed by Stein, and, on information and belief, the proceeds of which were obtained and used for purposes other than as represented by Stein and Passaretti. Stein represented to Plaintiff, and Passaretti confirmed, that the loan proceeds were to be used to commence a joint venture by Stein and Passaretti in a financial management business, which was to be 1970, but in fact that joint venture agreement never came into operation.

9. Furthermore, Stein secured his guarantee by the pledge of stock of a publicly traded company, and delivered the certificates for the shares pledged to Plaintiff to perfect the security

interest. However, Stein subsequently filed an affidavit with the issuer's transfer agent claiming that the securities had been lost, had new certificates for the shares issued to him and, on information and belief, utilized those same shares to obtain other funds.

## INDUCING THE LOAN

10. In or about August, 1998, at Plaintiff's offices, Stein represented to Simon Hershon and Ehud Laska, two of IBF's officers, that the proceeds of the loan were to be used as an advance against earnings to be paid to Passaretti to induce him to leave his present employment to form a joint venture with Stein to operate an asset management business commencing in the Fall of 1998. At that time, Stein represented to Hershon and Laska that Passaretti was employed by a securities broker/dealer and/or asset management affiliate of the Equitable, and was responsible for managing in excess of One Billion Dollars in assets.

11. Stein further represented to Hershon and Laska at this meeting that Passaretti had agreed to form the joint venture and that in consideration for the $2,000,000 payment, Passaretti would leave Equitable and form the joint venture with Stein. Further of this representation, Stein subsequently delivered a document to Plaintiff entitled "Joint Venture Agreement" dated September 21, 1998 and apparently signed by both Stein and Passaretti, a copy of which is annexed as Exhibit "A" (hereinafter the "Joint Venture Agreement").

## THE LOAN DOCUMENTS

12. On or about September 21, 1998, IBF and 1970 entered into a Loan Agreement (Exhibit "B"), which provides in pertinent part that:

    A.     IBF would make advances to 1970 up to the sum of Two Million Five Hundred Thousand ($2,500,000) Dollars;

  B.  1970 would pay IBF a commitment fee of 3% of the principal facility, for a total of Seventy Five Thousand ($75,000); and

  C.  IBF could extend the loan term for three consecutive thirty (30) day periods for a payment equal to 1% of the principal facility, that is for Twenty-Five Thousand ($25,000) for each extension.

13. Also on or about September 21, 1998, contemporaneously with the execution and delivery of the Loan Agreement, 1970 made and delivered the Note (Exhibit "C") in favor of IBF. The Note provides in pertinent part that:

  A.  So long as 1970 was not in default, the loan would bear interest at 18% annually;

  B.  1970 would repay so much of the principal facility as had been advanced to it, plus all accrued interest, on or before December 31, 1998;

  C.  In the event 1970 defaulted in repayment of principal or interest, that interest after such default would accrue, and become due and owing, at the lesser of 10% above the non-default interest rate or the maximum interest rate permitted by law; and

  D.  In the event the Note is delivered to an attorney for collection, 1970 would be required to pay legal fees in an amount equal to 10% of the outstanding principal and interest.

14. The Loan Agreement provides that Stein unconditionally guaranteed the obligations of 1970 under the Note and Loan Agreement.

15. Also on or about September 21, 1998, Stein executed a Security Agreement (Exhibit "D") acknowledging his unconditional guarantee of 1970's obligations under the Note and Loan Agreement.

16. Under the terms and conditions of the Security Agreement, executed by Stein as "Debtor," Stein assigned his interest in the Joint Venture Agreement to IBF and granted IBF a security interest in 7,000,000 shares of the stock owned by Stein in a company known as Detour Magazine, Inc. (the "Detour Stock") to secure the obligations of 1970 under the Note and Loan Agreement, and his obligations under the guarantee thereof.

17. Subsequent to execution of the Security Agreement, Stein delivered to Plaintiff stock certificate nos. 2238 for 3,560,608 shares of Detour Stock issued to Stein on or about May 27, 1998 and 2270 for 3,756,221 shares of Detour Stock issued to Stein on or about September 21, 1998, along with stock powers duly endorsed in blank by Stein.

18. On or about September 21, 1998 and on or about October 1, 1998, 1970 drew down on the principal facility in the total amount of $2,100,000, of which $2,000,000 was delivered to 1970, $75,000 was used to pay the commitment fee due under the Loan Agreement and $25,000 was used to pay a placement fee to a non-party.

## DEFAULTS AND EXTENSIONS

19. The Joint Venture did not begin operating in the Fall of 1998, 1970 defaulted on the Note and Loan Agreement and made no payments of principal or interest at any time on or prior to December 31, 1998.

20. Accordingly, Plaintiff requested a meeting with Passaretti to assure itself that the joint venture would commence operating.

21. In or about January or February, 1999, a meeting was held in Philadelphia, Pennsylvania (hereinafter "the 1999 Meeting"). In attendance at that meeting were Stein, Passaretti, Passaretti's counsel, Hershon, Laska and two other of Plaintiff's employees, Ivan Krasner and Laura Quinting. During that meeting, Passaretti assured Hershon, Laska, Krasner and Quinting that he was in the process of leaving Equitable, that he was committed to the joint venture and that the joint venture would begin operating shortly.

22. Thereafter, in reliance on the representations made by Stein and Passaretti, Plaintiff agreed to extend the due date for payment by 1970 as permitted by the Loan Agreement until March 31, 1999, and 1970 thereby incurred three separate extension fees of Twenty-One Thousand ($21,000) Dollars each (i.e., 1% of $2,100,000), for a total of Sixty-Three Thousand ($63,000) Dollars.

23. On or about March 29, 1999, Plaintiff made written demand for payment of all principal and interest on or before March 31, 1999 as required by the Loan Agreement and the Note, as extended in accordance with the terms thereof.

24. 1970 again defaulted on the Note and Loan Agreement, and made no payments of principal or interest at any time on or prior to March 31, 1999.

25. By letter dated May 21, 1999 (the "1999 Forbearance Agreement"), Plaintiff agreed to forebear from suit on the Note and Loan Agreement until July 31, 1999, in consideration for, *inter alia*, certain stipulated interim payments. Pursuant to that letter agreement, the first payment of $30,000 under the 1999 Forbearance Agreement was made at or about the time that Plaintiff agreed to forebear, and thereafter 1970 made a second payment of $30,000 and received credit for commissions totaling $20,250 earned in raising investments into funds organized and operated by

IBF or an affiliate, so that 1970 received credits totaling $80,250 against interest due and owing on the Note and Loan Agreement.

26. 1970 made no further payments, and at all times has remained in default of its obligations under the Note and Loan Agreement.

27. By letter dated April 15, 1999, demand was made of Stein to satisfy the obligations of the Note and Loan Agreement as required by his guarantee, which Stein failed to do.

28. Consequently, in or about September, 2000, Plaintiff attempted to foreclose on the collateral consisting of the Detour shares owned and pledged by Stein.

29. Detour's transfer agent advised Plaintiff that in or about April, 2000, Stein had filed an affidavit that Detour certificates nos. 2238 for 3,560,608 shares and 2270 for 3,756,221 shares (which are the certificates that Stein had pledged and delivered to Plaintiff to secure the guaranty) had been lost, and that in reliance on such affidavit the transfer agent had issued to Stein new certificates of Detour stock representing, *inter alia*, 7,136,829 shares that had previously been pledged and delivered to Plaintiff, thereby rendering valueless the Detour certificates in Plaintiff's possession.

30. Upon information and belief, Stein utilized the replacement shares of Detour stock as collateral or consideration in a separate and different transaction unrelated to Plaintiff. The basis of Plaintiff's information and belief are statements made by Stein to a representative of Plaintiff.

## THE INITIAL SUIT AND FURTHER FORBEARANCE

31. By reason of the foregoing, on or about March 7, 2001, IBF commenced an action in this Court, docket no. CV 01 1356 (Gershon, USDJ) against 1970, Stein and Passaretti for payment of all principal, interest and legal fees due under the Loan Agreement and Note.

32. IBF and Stein entered into a further agreement effective as of May 1, 2001 (hereinafter "the 2001 Forbearance Agreement"), which provided, *inter alia*, that IBF would further forebear for a period of one year (i.e. -- through May 1, 2002) from prosecuting its action on Stein's personal guarantee and the Security Agreement in consideration for certain minimum payments.

33. Pursuant to the 2001 Forbearance Agreement, by Stipulation dated May 30, 2001, entered as an Order of the Court by the Hon. Nina Gershon, U.S.D.J. on or about September 7, 2001, IBF discontinued its initial action without prejudice, and any statutes of limitations were permanently tolled as and at the date the initial action was first filed.

34. Stein made payments totaling $310,000 pursuant to the 2001 Forbearance Agreement, credited against outstanding interest due and owing under the Note.

35. The 2001 Forbearance Agreement has expired, and the Note remains in default.

36. Plaintiff repeats and realleges paragraphs "1" through "35" above in each claim set forth below as if fully set forth at length therein.

FIRST CLAIM
(Against 1970)
(Breach of Contract)

37. 1970 has breached the Note and Loan Agreement.

38. By reason of the foregoing, there is presently due and owing from 1970 to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment.

## SECOND CLAIM
(Against Stein)
(Guarantee)

39. Stein has breached the terms of the personal guarantee.

40. By reason of the foregoing, there is presently due and owing from Stein to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment.

## THIRD CLAIM
(Against 1970 and Stein)
(Foreclosure on Collateral)

41. By reason of 1970's default under the Note and Loan Agreement and Stein's default under the guarantee, Plaintiff seeks to foreclose its security interest in the Detour Stock.

42. Plaintiff, as successor in interest to IBF, holds a perfected security interest in the Detour Stock by virtue of the Security Agreement and the delivery to Plaintiff of the stock certificates with duly endorsed stock powers in blank.

43. By reason of the foregoing, Plaintiff demands judgment that:

    A. 1970 and Stein, and all persons claiming under them or either of them, subsequent to the commencement of this action be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to, the Detour Stock, and each and every part thereof; and

B. The Detour Stock be sold according to law so as to obtain the highest and greatest return on the sale thereof; and

C. The amount due to Plaintiff be adjudged to be the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter (less $390,250) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, and that the monies arising from the sale of the property be brought into court and plaintiffs be paid the proceeds of any such sale up to the total amount due, together with the costs and disbursements of this action.

### FOURTH CLAIM
### (Against Stein)
### (Breach of Contract)

44. Stein has breached his agreements with IBF by depriving it of the collateral.

45. By reason of the foregoing, there is presently due and owing from Stein to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment.

### FIFTH CLAIM
### (Against Stein)
### (Conversion)

46. Stein has converted the collateral pledged to Plaintiff to secure the guaranty.

47. Upon information and belief, such conversion by Stein was intentional, willful and malicious.

48. By reason of the foregoing, there is presently due and owing from Stein to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, plus punitive damages of Five Million ($5,000,000) Dollars.

### SIXTH CLAIM
### (Against Passaretti)
### (Fraud)

49. IBF relied on the Joint Venture Agreement in making the initial loan to 1970, and would not have made that loan in the absence of the Joint Venture Agreement.

50. Upon information and belief, Passaretti signed the Joint Venture Agreement. The basis of Plaintiff's information and belief is the document itself, representations by Stein to IBF and the fact that Passaretti confirmed the existence of the joint venture during the meeting in Philadelphia.

51. IBF relied on Passaretti's representations during the meeting in Philadelphia in agreeing to extend the due date of the loan.

52. Upon information and belief, the statements made by Passaretti were false when made in that Passaretti never intended to proceed with the joint venture, and his statements were maliciously, willfully and intentionally made to induce IBF to make the loan so that proceeds could be used for other purposes. The bases of Plaintiff's information and belief are the fact that the joint

venture never operated, and the following statements made by Stein to Hershon and Laska in Spring, 1999 that:

    A.    Passaretti had invested client funds outside of Equitable in contravention of Equitable's rules and regulations;

    B.    Passaretti's clients had lost substantial amounts of money on such trades;

    C.    Equitable was insisting that Passaretti repay those clients in full;

    D.    Stein had delivered the funds received from Plaintiff to Passaretti;

    E.    At the time that Stein delivered such funds he did not know of Passaretti's problem;

    F.    Passaretti had thereafter told Stein that he would not leave Equitable until all these clients were repaid in full; and

    G.    Passaretti has told Stein that he (Passaretti) had used the funds received from Stein towards repayment of the funds owed to Passaretti's clients at Equitable.

53.    By reason of the foregoing, there is presently due and owing from Pasarreti to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, plus punitive damages of Five Million ($5,000,000) Dollars.

## SEVENTH CLAIM
## (Against Pasaretti)
## (Negligent Misrperesentation)

54. Plaintiff repeats and realleges paragraphs "49" through "51" above as if fully set forth at length herein.

55. Passaretti was negligent in signing the Joint Venture Agreement and in representing to Hershon and Laska during the meeting in Philadelphia that he intended to proceed with the joint venture.

56. By reason of the foregoing, there is presently due and owing from Passaretti to Plaintiff the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment.

WHEREFORE Plaintiff IBF Collateralized Finance Corporation, as successor in interest to IBF Special Purpose Corporation III respectfully requests that judgment be entered:

A. On the first claim, against Defendant 1970 Asset Management Corp. for actual damages of the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250 + $310,000) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment;

B.  On the second claim, against Defendant Edward Stein for actual damages of the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements ($80,250) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment;

C.  On the third claim, jointly and severally against Defendants 1970 Asset Management Corp. and Edward Stein that:

    i.    1970 and Stein, and all persons claiming under them or either of them, subsequent to the commencement of this action be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to, the Detour Stock, and each and every part thereof; and

    ii.    The Detour Stock be sold according to law so as to obtain the highest and greatest return on the sale thereof; and

    iii.    The amount due to Plaintiff be adjudged to be the principal sum of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter (less $80,250) and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, and that the monies arising from the sale of the property be brought into court and plaintiffs be paid the proceeds of any such sale up to the total amount due;

D. On the fourth claim, against Defendant Edward Stein for actual damages of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment;

E. On the fifth claim, against Defendant Edward Stein for actual damages of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, plus punitive damages of Five Million ($5,000,000);

F. On the sixth claim, against Defendant Lawrence Passaretti for actual damages of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment, plus punitive damages of Five Million ($5,000,000) Dollars;

G. On the seventh claim, against Defendant Lawrence Passaretti for actual damages of Two Million One Hundred Sixty Three Thousand ($2,163,000) Dollars, plus interest under the Note at 18% through March 31, 1999 and the default rate thereafter, less $390,250, representing the total amount paid under the forbearance agreements and reasonable attorneys' fees in an amount equal to 10% of the total principal and interest due and owing at the time of judgment;

      H.      For the costs and disbursements of this action, including reasonable attorneys' fees;

and

      I.      For such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       October 24, 2002

                                 KURZMAN EISENBERG CORBIN LEVER
                                 & GOODMAN, LLP

                                 By: _____
                                     Andrew J. Goodman (AG 3406)
                                     A Member of the Firm
                                     Attorneys for Plaintiff
                                     675 Third Avenue, Suite 1800
                                     New York, New York 10017
                                     (212) 661-2150